STATE OF NEW YORK
SUPREME COURT          COUNTY OF TIOGA

---

**JEFFREY HELLMAN, Individually, AND KAREN HELLMAN, his spouse,**
740 Meade Road,
Apalachin, New York 13732

*Plaintiffs,*

**vs.**

**BRP, INC. a/k/a BOMBARDIER RECREATIONAL PRODUCTS, INC.,**
726 rue St.-Joseph Street
Valcourt, Quebec, J0E2L0,

**BRP US, INC.,**
10101 Science Drive
Sturtevant, Wisconsin 53177-1757,

**ANDRE & SON POWER SPORTS, LLC,**
17084 State Route 706
RR 1 Box 1083
Montrose, Pennsylvania 18801,

**MARK W. DAVENPORT**
162 Grant Boulevard
Exeter, Pennsylvania 18643,

and

**NATALIE C. DAVENPORT**
14711 State Route 858
Little Meadows, Pennsylvania 18830,

*Defendants.*

---

**SUMMON**

Index No.:

2021- 0006 2231

**TO THE ABOVE-NAMED DEFENDANTS:**

**YOU ARE HEREBY SUMMONED** and required to serve upon Plaintiffs' attorneys an Answer to the Complaint in this action within twenty (20) days after service of this Summons, exclusive of the day of service, or within thirty (30) days after service is complete if this Summons is not personally delivered to you within the State of New York.  In case of your failure to answer, judgment will be taken against you by default for the relief demanded in the Complaint.

The basis of venue designated is the residence of Plaintiffs.


**DATED:**       October ___, 2021          **CHERUNDOLO LAW FIRM, PLLC**

By: _____
John C. Cherundolo, Esq.
Peter C. Papayanakos, Esq.

*Attorneys for Plaintiffs*
Office and Post Office Address
AXA Tower I, 15th Floor
100 Madison Street
Syracuse, New York 13202-2078
Telephone (315) 449-9500

**FAX SERVICE NOT ACCEPTED**

STATE OF NEW YORK
SUPREME COURT                COUNTY OF TIOGA

---

**JEFFREY HELLMAN, Individually, AND KAREN
HELLMAN, his spouse,**

                                                *Plaintiffs,*

**vs.**

**BRP, INC. a/k/a BOMBARDIER RECREATIONAL
PRODUCTS, INC., BRP US, INC., ANDRE & SON
POWER SPORTS, LLC, MARK W. DAVENPORT, and
NATALIE C. DAVENPORT,**

                                                *Defendants.*

**COMPLAINT**

Index No.:

2021-0006 2231

---

Plaintiffs, Jeffrey Hellman and Karen Hellman, by and through their attorneys Cherundolo

Law Firm, PLLC, brings this Complaint against the Defendants and allege as follows:

## NATURE OF ACTION

1.      This action grounded in negligence, strict productions liability, breach of warranty,

and failure to warn arises out of Plaintiff Jefferey Hellman suffering a traumatic spinal cord injury

on April 29, 2020, while a passenger in a certain 2019 Can-Am Maverick Sport X RC 1000R

utility terrain vehicle (hereinafter subject "UTV") designed, manufactured, warranted, imported,

marketed, distributed, inspected, assembled, and tested by BRP, Inc., Bombardier Recreational

Products, Inc., BRP US, Inc., resold by Andre & Son Power Sports, LLC, and owned and operated

by Mark W. Davenport and Natalie C. Davenport

## THE PARTIES

2.      The Plaintiffs, Jeffrey Hellmann and Karen Hellman, were and are individual citizens of the State of New York, residing at all times material hereto, at ▆▆▆▆▆▆▆▆ Apalachin, New York 13732, county of Tioga.

3.      Upon information and belief, at all times material hereto, Defendant, BRP, Inc., and/or Bombardier Recreational Products, Inc., was and is engaged in the business of designing, manufacturing, warranting, selling, distributing, inspecting, assembling, testing, and marketing recreational vehicles and utility terrain vehicles, including the 2019 Can-Am Maverick Sport X RC 1000R, in New York State and throughout the United States of America, and is a corporation organized and existing under the laws of Canada and having a principal place of business located at 726 rue St.-Joseph Street, Valcourt, Quebec, J0E2L0, and is authorized to do business in New York State.

4.      Upon information and belief, BRP, Inc., owns 100% of Bombardier Recreational Products, Inc., which in turns owns 100% of BRP US, Inc.

5.      Upon information and belief, at all times material hereto, the Defendant BRP, US, Inc., was and is engaged in the business of importing, marketing, distributing, warranting, servicing, repairing, inspecting, assembling, testing, and selling recreational vehicles and utility terrain vehicles, including the 2019 Can-Am Maverick Sport X RC 1000R, in New York State and throughout the United States of America, and is a corporation organized and in existence under the laws of the state of Delaware, having a placing place of business at 10101 Science Drive, Sturtevant, Wisconsin 53177-1757, and is authorized to do business in New York State.

6.      Upon information and belief, Defendants BRP, US, Inc., BRP, Inc., and/or Bombardier Recreational Products, Inc., designed, manufactured, warranted, imported, marketed,

distributed, inspected, assembled, and tested a certain roof associated with this UTV, specifically a "roof rigid B160 KIT RST."

7.      Upon information and belief, at all times relevant hereto, Andre & Son Power Sports, LLC, (hereinafter collectively referred to with BRP, Inc., Bombardier Recreational Products, Inc., and BRP, US. Inc. as "Defendants") was and is engaged in the business of importing, marketing, distributing, warranting, servicing, repairing, inspecting, assembling, testing, and selling recreational vehicles and utility terrain vehicles, including the 2019 Can-Am Maverick Sport X RC 1000R, in New York State, the State of Pennsylvania and throughout the United States of America and was and is a corporation organized and in existence under the laws of the State of Pennsylvania, with an office for the conduct of business located at 17084 State Route 706, RR 1 Box 1083, Montrose, PA 18801.

8.      Upon information and belief, Defendants collectively import, design, sell, market, distribute, warrant, service, repair, inspect, assemble and test utility terrain vehicles under the "Can-Am" brand, including the 2019-Can-Am Maverick Sport, X RC 1000R.

9.      Upon information and belief, at or about the time of the sale of the subject UTV and/or the time of the incident as alleged herein, Defendants transacted business in New York State, or contacted to supply its products or services in this state by importing, marketing, distributing, warranting, servicing, repairing, inspecting, assembling, testing, and selling recreational vehicles, specifically Can AM UTVs, and/or committed a tortious act within the State of New York, and/or have committed a tortious act outside the State of New York causing injury to persons within the state and regularly conduct or solicit business in this State or engage in any other persistent course of conduct or derive substantial revenue from goods used or consumed or services rendered in the State of New York or expect or should reasonably expect their acts to have

consequences in the State of New York and derive substantial revenue from interstate or international commerce and that such conduct has created a substantial connection with the State of New York.

10.     Upon information and belief, Defendants are subject to jurisdiction in the State of New York pursuant to the applicable sections of the New York State CPLR and have created and maintained minimum contacts with the State of New York so that traditional notions of fair play and substantial justice are not infringed upon.

11.     Upon information and belief, Defendant Mark W. Davenport on February 18, 2020, purchased a 2019 Can-Am Maverick Sport X RC 1000R (hereinafter the "subject UTV), bearing VIN number 3JB1PAX42KK000594 (stock #CAN000594) with carbon black & octane blue color and a "roof rigid B-160 kit RST" (part #715006218) as an accessory.

12.     Upon information and belief, Defendant Mark W. Davenport at all times relevant to this action was the owner of the subject UTV, and resided at ███████████ Exeter, Pennsylvania 18643.

13.     Upon information and belief, Defendant Natalie C. Davenport on April 29, 2020, was the operator of the subject UTV, with the knowledge, permission and consent of the owner, Mark W. Davenport, and resided at ███████████ Little Meadows, Pennsylvania 18830.

14.     Upon information and belief, Defendants Mark W. Davenport and Natalie C. Davenport are subject to jurisdiction in the State of New York by virtue of the provisions of CPLR § 302, including committing a tortious act within New York State.

## FACTUAL ALLEGATIONS

15.     On February 18, 2020, Mr. Mark A. Davenport purchased a 2019 Cam-Am Maverick Sport XRC 1000R UTV from Andre & Son Power Sports, LLC, a platinum-level distributor of BRP Can-Am UTVs, bearing VIN number 3JB1PAX42KK000594 (stock #CAN000594) with carbon black & octane blue color and a "roof rigid B-160 kit RST" (part #715006218) as an accessory.

16.     Upon information and belief, the subject UTV was designed, manufactured, warranted, imported, marketed, distributed, inspected, assembled, and tested by BRP, Inc., Bombardier Recreational Products, Inc., and/or BRP US, Inc., and then resold by Andre & Son Power Sports, LLC.

17.     Upon information and belief, Defendants knew or should have known prior to the design, manufacturing, testing, assembly, marketing, distribution and/or selling the subject UTV that roll overs/lateral roll overs are a leading cause of injuries to passengers involved in riding in utility terrain vehicles.

18.     Upon information and belief, the subject UTV was defectively designed and/or manufactured in that the vehicle had a propensity to rollovers coupled with the fact that the subject UTV could start and operate despite a person being in the passenger seat without having an opportunity to utilize and engage a safety harness; failed to have an appropriate safety harness system; and/or having a roof rack that could cause an individual to suffer a traumatic spinal cord injury in the event of a roll over/lateral roll over.

19.     Upon information and belief, the subject UTV was and/or is defectively designed and/or manufactured in that it was prone to rollover and did not provide appropriate protection to a passenger under reasonable and/or foreseeable use of the product.

20.     Upon information and belief, prior to designing, manufacturing, testing, marketing, supplying, distributing and/or selling the UTV, Defendants knew and/or should have known and/or had knowledge that other feasible and safer alternative designs existed to prevent roll overs, particularly at low speeds, and in the event of a roll over to provide necessary safety, including an interlock system for the passenger that will not permit a driver to be able to operate the UTV until a passenger engages the safety harness, a roof rack that would not causing a significant spinal cord injury in the event of a rollover that included different material or padding, a lower center of gravity and/or alternate suspension system, and a four point safety harness and/or with certain side netting, or some other feasible and safer alternative design.

21.     Upon information and belief, despite this knowledge by said Defendants, the UTV was not designed, designed, manufactured, warranted, imported, marketed, distributed, inspected, assembled, and tested properly to avoid rollover, particularly at low speeds, and to mitigate and prevent injuries in the event of a rollover.

22.     On or about April 29, 2020, Ms. Natalie C. Davenport, with the permission and consent of the owner, Mr. Mark W. Davenport, was operating the subject UTV at a property located at ███████████████ Owego, New York, 13827, County of Tioga, that, and upon information and belief, was owned by Darren M. Brown.

23.     At or about 6:30 P.M., Plaintiff Jeffrey Hellman sat down in the passenger seat of the subject UTV operated by Ms. Davenport.  At that time Ms. Davenport slowly began to pull away making a right-hand turn causing the subject UTV to rollover prior to Plaintiff Jeffrey Hellman fastening the safety harness and resulting in him striking the honeycomb roof of the vehicle.

24.     Upon information and belief, Ms. Davenport was operating the UTV for the purposes and in the manner normally intended at the time of the incident and/or an unintended yet in a reasonably foreseeable manner, and the Plaintiff Jeffrey Hellman was sitting in the passenger seat for the purpose intended and/or in an unintended yet reasonably foreseeable manner.

25.     As a result of the roll over and striking the honeycomb roof of the subject UVT, Plaintiff Jeffrey Hellman was caused to suffer and sustain serious injuries when his head impacted the roof during the rollover causing his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic, and has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional distress and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries, and has otherwise has been severely and devastatingly injured all as a direct and proximate result of the negligent, careless, and purposeful activities of the Defendants herein as detailed below.

26.     Upon information and belief, the injuries sustained by Plaintiff Jeffrey Hellman on April 29, 2021, as alleged herein and continuing into the future, were a direct and proximate result of the Defendants failure to design, manufacture, warrant, import, market, distribute, inspect, assemble, warn and test the UTV to avoid rolling over, particular at low speeds; failing to have an adequate suspension to cause lateral rollover at low speeds; employing a suspension creating a tendency for the UTV to roll over laterally at low speeds; failing to have a lower center of gravity to prevent roll overs laterally at low speeds; failing to employ an alternate design such as an interlocking system that will not permit the UTV to be operated in the event sufficient weight is sensed on the passenger side/seat in the event a safety harness is not engaged; allowing the vehicle to be operated when an individual is in the passenger seat without that person engaging the safety

harness; failing to employ an adequate safety harness, including a four point safety harness and/or certain side netting; failing to have sufficient and adequate mobility restraints; employing a passenger seat that would not prevent the passenger from sliding out of their seat in the event of a lateral roll over; failing to design a roof rack that would not cause an individuals neck to suffer significant injuries if struck during a lateral roll over, and specifically failing to consider someone's head striking and/or snagging on the roof rack; failed to use and/or design adequate and/or proper materials to manufacture the roof of the UTV and/or sufficient padding so as to prevent a spinal cord injury from occurring; failing to advise that the roof could cause serious and disabling injuries in the event of a low speed roll over; failed to have sufficient warnings that the UVT would and could roll over laterally at low speeds; failing to have sufficient warnings regarding employing a safety harness or warning of the high center of gravity of the UTV could result in lateral rollover at low speeds; failing to have sufficient warnings regarding wearing a helmet when riding in the passenger seat of the UTV; designed, manufactured, warranted, imported, marketed, distributed, inspected, assembled, and sold such UTV with a dangerous propensity to fail (roll over) during foreseeable use at low speeds; failed to use reasonable care in testing the UTV as to avoid an unreasonable risk of harm to users, and, in particular, the Plaintiff Jeffrey Hellman, and otherwise, failed to use reasonable care in the design, manufacturing, marketing, inspecting, labeling and distribution of the subject UTV.   Each of the foregoing negligent acts, singularity or in combination, were the direct and proximate cause of Plaintiff's injuries, disabilities and damages.

27.     Upon information and belief, and as a result of the negligence of the Defendants herein as detailed above, and each, any or all of said Defendants, jointly, severally and/or individually, and as a result of the fact that the aforesaid Defendants placed into the stream of commerce, and otherwise sold the aforesaid UTV in such a defective and dangerous condition so

that it was "not reasonably safe" for the uses ordinarily intended or such uses that are unintended yet reasonably foreseeable, and that said UTV, as it existed at the aforesaid time and place otherwise was defective, not fit for the purpose intended, or such other purpose that was reasonably foreseeable yet unintended, the Plaintiff Jeffrey Hellman was caused to be seriously injured.

28.     Upon information and belief, and as a direct and proximate result of the negligence, carelessness and recklessness of the Defendants herein, the Plaintiffs hereby seek a trial by a jury of their peers, and otherwise seek such fair and reasonable amount as may be awarded by a jury of peers for the injuries alleged herein.

29.     Upon information and belief, the amount in controversy exceeds the jurisdictional limits of all lower Courts.

30.     Upon information and belief, the Plaintiffs herein seek relief from the applicable provisions of Article 16 of the New York Civil Practice Law and Rules, in as much as the Plaintiffs have sustained an indivisible injury, grave in nature, that was caused jointly, severally and/or individually be each, any, or all of the named Defendants herein.

**AS AND FOR A FIRST SEPARATE AND
DISTINCT CAUSE OF ACTION FOR NEGLIGENCE AGAINST BRP, INC.,
BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP, US. INC., AND
ANDRE AND SONS POWERSPORTS, LLC, PLAINTIFFS HEREBY ALLEGE
AS FOLLOWS:**

31.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully set forth herein.

32.     Upon information and belief, and at all times prior to April 29, 2020, the Defendants Andre & Son Power Sports, LLC, BRP, Inc., Bombardier Recreational Products, Inc., and BRP, US. Inc. owed the Plaintiff a duty to manufacture, test, assemble and design a reasonably safe UTV and were negligent in the designing, manufacturing, testing, marketing, inspecting, supplying,

distributing and/or selling of the UTV and otherwise were negligent with regard to the design and/or construction of the UTV in that said Defendants failed to test the UTV to avoid rolling over; failed to have an adequate suspension resulting in lateral rollover at low speeds; employed a suspension creating a tendency for the UTV to roll over laterally at low speeds; failed to have a lower center of gravity to prevent roll overs laterally at low speeds; failed to employ an alternate design such as an interlocking system that will not permit the UTV to be operated in the event sufficient weight is sensed on the passenger side/seat in the event a safety harness is not engaged; allowed the vehicle to be operated when an individual is in the passenger seat without that person engaging the safety harness; failed to employ an adequate safety harness, including a four point safety harness and/or certain side netting; failed to have sufficient and adequate mobility restraints; employed a passenger seat that would not prevent the passenger from sliding out of their seat in the event of a lateral roll over; failed to design a roof rack that would not cause an individual's neck to suffer significant injuries if struck during a lateral roll over, and specifically failed to consider someone's head striking and/or snagging on the roof rack; failed to design and/or use proper materials to manufacture the roof of the UTV and/or including sufficient padding so as to prevent a spinal cord injury from occurring; failed to advise that the roof could cause serious and disabling injuries in the event of a low speed roll over; failed to have sufficient warnings that the UVT would and could roll over laterally at low speeds; failed to have sufficient warnings regarding employing a safety harness or warning of the high center of gravity of the UTV could result in lateral rollover at low speeds; failed to have sufficient warnings regarding wearing a helmet when riding in the passenger seat of the UTV; designed, manufactured, warranted, imported, marketed, distributed, inspected, assembled, and sold such UTV with a dangerous propensity to fail (roll over) during foreseeable use at low speeds; failed to use reasonable care in testing the UTV as to

avoid an unreasonable risk of harm to users, and, in particular, the Plaintiff Jeffrey Hellman, and otherwise, failed to use reasonable care in the design, manufacturing, marketing, inspecting, labeling and distribution of the subject UTV.

33.     As a direct and proximate result of the negligent, carelessness and recklessness of the Defendants as alleged herein, and without any negligence of the Plaintiff Jeffrey Hellman contributing thereto, he has been caused to suffer and sustain serious injuries when his head impacted the honeycomb-style plastic roof during the rollover causing his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic; and has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional distress, future medical care and treatment and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries, and has otherwise has been severely and devastatingly injured.

34.     Upon information and belief, the Plaintiff herein was free from comparative or contributory negligence that caused or contributed to the aforesaid injuries that he sustained.

35.     As a direct and proximate result of the aforesaid, Plaintiff Jeffrey Hellman hereby seeks judgment as against Defendants, and each of them, jointly, severally and individually, in such fair and reasonable amount as may be awarded by a jury of his peers, and requests compensatory damages and punitive damages, together with interest, costs of suit, attorney's fees, and such further relief as the Court deems just and equitable.

**AS AND FOR A SECOND SEPARATE AND DISTINCT CAUSE OF ACTION FOR STRICT LIABILITY AGAINST BRP, INC., BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP, US. INC., AND ANDRE AND SONS POWERSPORTS, LLC, PLAINTIFFS HEREBY ALLEGE AS FOLLOWS:**

36.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully set forth herein.

37.     Upon information and belief, the subject UTV designed, manufactured, tested, inspected, marketed, supplied, distributed and/or sold by the Defendants was of a defective nature with regard to its design and manufacturing, unreasonably dangerous in design, manufacture and assembly, was not reasonably safe and otherwise was not for the intended purposes or unintended yet reasonably foreseeable purposes so as to have the Defendants liable under a theory of **strict product liability in tort** for the injuries sustained by the Plaintiff Jeffrey Hellman.

38.     Upon information and belief, the subject UTV's design defects and manufacturing defects, include but are not limited to the: design and construction of the UTV, including its suspension and distance to the ground, i.e., not enough clearance; failing to have an adequate suspension system resulting in lateral rollover at low speeds when a safer and feasible alternative suspension system existed and exists; employing a suspension creating a tendency for the UTV to roll over laterally at low speeds; failing to have a lower center of gravity to prevent roll overs laterally at low speeds; failing to employ an alternate feasible and safer design such as an interlocking system that will not permit the UTV to be operated in the event sufficient weight is sensed on the passenger side/seat in the event a safety harness is yet to be engaged; allowing the vehicle to be operated when an individual is in the passenger seat without that person engaging the safety harness; failing to employ an adequate safety harness, including a four point safety harness and/or certain side netting; failing to have sufficient and adequate mobility restraints; employing a passenger seat that would not prevent the passenger from sliding out of their seat in the event of a lateral roll over; failing to design a roof rack that would not cause an individual's neck to suffer significant injuries if struck during a lateral roll over, and specifically failed to consider someone's

head striking and/or snagging on the roof rack; failing to design and/or use proper materials to manufacture the roof of the UTV and/or not including sufficient padding so as to prevent a spinal cord injury from occurring; failed to design the UTV, including its suspension, starting system (allowing the vehicle to be operated with a passenger that has yet to engage the safety harness), safety harness system and roof rack with state of the art design criteria; failed to design and manufacture adequate safeguard to prevent a rollover, especially when a rider enters the passenger seat and has yet to engage the safety harness;  failing to design and manufacture the UTV to mitigate the risk of roll over and to mitigate injuries once a roll over occurs; failing to market, supply, distribute, test, assemble, and sell the UTV, which was defectively designed and manufactured, so that said UTV had a dangerous propensity to fail during foreseeable use; marketing, supplying, distributing and selling the Tire which was defectively designed and manufactured such that said Tire had a dangerous propensity to fail during foreseeable use; failing to use reasonable care in testing the UTV so as to avoid an unreasonable risk of harm to consumers, and in particular the Plaintiff Jeffrey Hellman; and otherwise failed to use reasonable care in the design, manufacturing, marketing, inspecting, labeling and distribution of the subject UTV.

39.    Upon information and belief, Defendants knew, or should have known at the time of sale or distribution or delivery of the subject UTV that a similar UTV with this design could cause roll overs at low speeds and in the event of a roll over cause significant injuries, or otherwise knew or should have known the subject vehicle was of a defective design and manufacture, unreasonably dangerous in design, manufacture and assembly to cause an injury to a person, as opposed to other feasible and alternative designs, including an interlock system for the passenger that will not permit a driver to be able to operate the UTV until a passenger engages the safety harness, a roof rack that would not causing a significant spinal cord injury in the event of a rollover

that included different material or padding, a lower center of gravity and/or alternate suspension system, and a four point safety harness and/or with certain side netting.

40.     As a direct and proximate result of the subject UTVs design and manufacturing defects, and without any negligence of the Plaintiff Jeffrey Hellman contributing thereto, he has been caused to suffer and sustain serious injuries when his head impacted the honeycomb-style plastic roof during the rollover causing his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic; and has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional distress, future medical care and treatment and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries, and has otherwise been severely and devastatingly injured.

41.     As a result of the foregoing, the Defendants are strictly liable in tort, and are answerable to the Plaintiff Jeffrey Hellman for designing and manufacturing a defective product not fit for its intended purposes, and which was unreasonably dangerous when used as designed and marketed.

42.     As a direct and proximate result of the aforesaid, the Plaintiff Jeffrey Hellman hereby seeks judgment against the Defendants in such fair and reasonable amount as may be awarded by a jury of his peers, and requests compensatory damages, together with interest, costs of suit, attorney's fees and such further relief as the Court deems just and equitable.

## AS AND FOR A THIRD SEPARATE AND DISTINCT CAUSE OF ACTION FOR BREACH OF IMPLIED WARRANTY AGAINST BRP, INC., BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP, US. INC., AND ANDRE AND SONS POWERSPORTS, LLC, PLAINTIFFS HEREBY ALLEGE AS FOLLOWS:

43.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully set forth herein.

44.     Upon information and belief, the aforesaid Defendants, or each, or any, or all of said Defendants impliedly warranted that the subject UTV was of a merchantable quality, fit for the purpose intended or such reasonable foreseeable purpose for which it was intended, and free from defects in design and manufacture.

45.     Upon information and belief, the UTV was utilized by the Plaintiff Jeffrey Hellman and Ms. Natalie C. Davenport for the purpose it was intended or a reasonably foreseeable purpose when the Plaintiff sat down in the passenger seat.  The Plaintiff relied upon the implied warranties of merchantability and fitness for a particular propose provided by Defendants when he attempted to be driven by Ms. Natalie C. Davenport in the subject UTV.

46.     Upon information and belief, the Defendants, and each or any or all of said Defendants breached the aforesaid warranties of merchantability and fitness for the particular purpose.

47.     Upon information and belief, the Plaintiff Jeffrey Hellman, has suffered severe, permanent, disabling, and catastrophic injuries as a result of the breach of implied warranty of the Defendants, and each, or any, or all of said Defendants and as a result of the defective and unreasonably dangerous nature of the aforesaid UTV.

48.     As a direct and proximate result of the breach of implies warranties of the Defendants as discussed herein, the Plaintiff Jeffrey Hellman has been caused to suffer and sustain serious injuries when his head impacted the honeycomb-style plastic roof during the rollover causing his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic; and

has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss

of earnings, pain, suffering, loss of enjoyment of life, emotional distress, future medical care and

treatment and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries,

and has otherwise has been severely and devastatingly injured.

49.     Upon information and belief, and as a direct and proximate result of the breach of

warranties of the Defendants herein, and each or any or all of said Defendants, and without any

negligence or culpable conduct of the Plaintiff Jeffrey Hellman contributing thereto, and as a result

of the defective nature of the aforesaid product in question, the Plaintiff has been caused to sustain

severe and permanent disabling injuries and damages, for which he seeks damages for his losses

resultant from such breach of warranties, as against the Defendants, in such fair and reasonable

amount as may be found by a jury of his peers.

## AS AND FOR A FOURTH SEPARATE AND
## DISTINCT CAUSE OF ACTION FOR BREACH OF EXPRESS WARRANTY
## AGAINST BRP, INC., BOMBARDIER RECREATIONAL PRODUCTS, INC.,
## BRP, US. INC., AND ANDRE AND SONS POWERSPORTS, LLC, PLAINTIFFS
## HEREBY ALLEGE AS FOLLOWS:

50.     Plaintiffs hereby repeat and reallege all of the allegations set forth above as if fully

set forth herein.

51.     Upon information and belief, the aforesaid Defendants, or each, or any, or all of

said Defendants expressly warranted and/or made assurances and warranties to the general public,

and in particular the Plaintiff Jeffrey Hellman that the UTV, its harnesses, its interlock system, its

suspension, and its roof rack were safe and reasonably fit for their intended purposes and such

other unintended yet foreseeable purposes and that the subject UTV was generally safe.

52.     Upon information and belief, the UTV was utilized by the Plaintiff Jeffrey Hellman

and/or Ms. Natalie C. Davenport for the purpose it was intended or a reasonably foreseeable

purpose when he attempted to mount and inflate the Tire. The Plaintiff relied upon the express warranties provided by Defendants when he attempted to be driven by Ms. Natalie C. Davenport in the subject UTV.

53.    Upon information and belief, the said Defendants, and each or any or all of said Defendants breached the aforesaid express warranties.

54.    Upon information and belief, the Plaintiff Jeffrey Hellman, has suffered severe, permanent, disabling, and catastrophic injuries as a result of the breach of express warranty of the Defendants, and each, or any, or all of said Defendants and as a result of the defective and unreasonably dangerous nature of the aforesaid Tire and bead.

55.    As a direct and proximate result of the breach of express warranties as discussed herein, and the unreasonably dangerous and defective nature of the aforesaid UTV, the Plaintiff the Plaintiff Jeffrey Hellman has been caused to suffer and sustain serious injuries when his head impacted the honeycomb-style plastic roof during the rollover causing his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic; and has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional distress, future medical care and treatment and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries, and has otherwise has been severely and devastatingly injured..

56.    Upon information and belief, and as a direct and proximate result of the breach of express warranties of the Defendants herein, and each or any or all of said Defendants, and without any negligence or culpable conduct of the Plaintiff Jeffrey Hellman contributing thereto, and as a result of the defective nature of the aforesaid product in question, the Plaintiff has been caused to

sustain severe and permanent disabling injuries and damages, for which he seeks damages for his

losses resultant from such breach of express warranties, as against the Defendants, in such fair and

reasonable amount as may be found by a jury of his peers.

## AS AND FOR A FIFTH SEPARATE AND
## DISTINCT CAUSE OF ACTION FOR FAILURE TO WARN AGAINST BRP, INC., BOMBARDIER RECREATIONAL PRODUCTS, INC., BRP, US. INC., AND ANDRE AND SONS POWERSPORTS, LLC, PLAINTIFFS HEREBY ALLEGE AS FOLLOWS:

57.     Plaintiffs repeat and reallege all of the allegations set forth as if fully set forth herein.

58.     Upon information and belief, the Defendants, and each, or any, or all of said Defendants had a duty to warn of the dangers involved with the driving of the UTV and/or sitting in the passenger seat while the UTV is operated, including, the need to use safety harnesses, its propensity to roll laterally at minimum speeds, the dangers of not wearing a helmet, that the roof could potentially cause serious injuries if struck during a roll over and failed to adequately warn of the dangers involved with the operation of the subject UTV and/or any other foreseeable use of the product that they knew or should have known.

59.     Upon information and belief, the Plaintiff Jeffrey Hellman, has suffered severe, permanent, disabling, and catastrophic injuries as a result of the Defendants failure to warn of the dangers involved with the operation of the subject UTV or while sitting in the passenger seat of the UTV.

60.     As a direct and proximate result of the failure to warn as discussed herein, and the unreasonably dangerous and defective nature of the aforesaid UTV, the Plaintiff Jeffrey Hellman has been caused to suffer and sustain serious injuries when his head impacted the honeycomb-style plastic roof during the rollover causing his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has

been rendered a quadriplegic; and has otherwise been rendered sick, sore, lame and disabled, and

has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional

distress, future medical care and treatment and otherwise has been caused to sustain ongoing care,

treatment, and ongoing injuries, and has otherwise has been severely and devastatingly injured.

61.     Upon information and belief, and as a direct and proximate result of the failure to

warn of the Defendants herein, and each or any or all of said Defendants, and without any

negligence or culpable conduct of the Plaintiff Jeffrey Hellman contributing thereto, and as a result

of the defective nature of the aforesaid product in question and failure to warn, the Plaintiff has

been caused to sustain severe and permanent disabling injuries and damages, for which he seeks

damages for his losses resultant from such failure to warn, as against the Defendants, in such fair

and reasonable amount as may be found by a jury of his peers.

## AS AND FOR A SIXTH SEPARATE AND DISTINCT CAUSE OF ACTION FOR NEGLIGENCE AGAINST NATALIE C. DAVENPORT AND MARK W. DAVENPORT, PLAINTIFFS HEREBY ALLEGE AS FOLLOWS:

62.     Plaintiffs repeat and reallege all of the allegations set forth as if fully set forth

herein.

63.     Upon information and belief, the Defendant Natalie C. Davenport had a duty to

operate the subject UTV safely and reasonably, and was operating such recreational vehicle with

the consent, supervision, permission and/or knowledge of Defendant Mark W. Davenport.

64.     Upon information and belief, the Defendant Natalie C. Davenport operated the

vehicle in a negligent and careless manner to cause injuries to the Plaintiff Jeffrey Hellman by

failing to apply the brakes in a timely fashion; failing to have the vehicle under control; failing to

steer the vehicle properly so as it to not cause a lateral roll over; made too sharp of a right hand

turn; failed to provide the passenger, Plaintiff Jeffrey Hellman, with sufficient time to engage the

safety harness; failed to keep a reasonably adequate and proper lookout and/or to be reasonably alert at all times; in failing to veer to avoid the roll over; failing to keep a proper lookout for things as they then and there presented and as a direct and proximate result caused the subject UTV to roll over to cause injuries to the Plaintiff Jeffrey Hellman.

65.    Upon information and belief, the Defendant Mark W. Davenport is vicariously liable pursuant to the New York Vehicle and Traffic Law, and was otherwise negligent, careless, and reckless with regard to allowing Defendant Natalie C. Davenport use and access to the subject UTV.

66.    As a direct and proximate result of the negligent, carelessness and recklessness of the Defendants Natalie C. Davenport and Mark W. Davenport as alleged herein, and without any negligence of the Plaintiff Jeffrey Hellman contributing thereto, he has been caused to suffer and sustain serious injuries as a result of the roll over caused, in part, by Natalie C. Davenport, resulting in his spine fracturing at C-4,5,6, and 7, developing a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic; and has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional distress, future medical care and treatment and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries, and has otherwise has been severely and devastatingly injured.

67.    Upon information and belief, the Plaintiff herein was free from comparative or contributory negligence that caused or contributed to the aforesaid injuries that he sustained.

68.    As a direct and proximate result of the aforesaid, Plaintiff Jeffrey Hellman hereby seeks judgment as against Defendants, and each of them, jointly, severally and individually, in such fair and reasonable amount as may be awarded by a jury of his peers, and requests

compensatory damages and punitive damages, together with interest, costs of suit, attorney's fees, and such further relief as the Court deems just and equitable.

### AS AND FOR AN SEVENTH, SEPARATE AND DISTINCT CAUSE OF ACTION FOR DERIVATIVE CLAIMS AGAINST ALL DEFENDANTS, PLAINTIFFS ALLEGE AS FOLLOWS:

69.     Plaintiffs repeat and reallege all of the allegations set forth as if fully set forth herein.

70.     At all times herein mentioned, the Plaintiff Karen Hellman was and is the wife of the Plaintiff Jeffrey Hellman, and the two live together as husband and wife.

71.     Plaintiff Jeffrey Hellman was caused to sustain severe and permanent injuries, including but not limited to his spine to fracture at C-4,5,6, and 7, development of a large hematoma on his head and paralysis throughout his body, including his trunk/torso, and has been rendered a quadriplegic; and has otherwise been rendered sick, sore, lame and disabled, and has had to incur medical bills, loss of earnings, pain, suffering, loss of enjoyment of life, emotional distress, future medical care and treatment and otherwise has been caused to sustain ongoing care, treatment, and ongoing injuries, and has otherwise has been severely and devastatingly injured.

72.     As a direct and proximate result of the negligence, careless and recklessness of the Defendant as heretofore set forth, the Plaintiff Karen Hellman, without any culpable conduct of the Plaintiffs contributing thereto, has had to nurse and render care and aid to the Plaintiff Jeffrey Hellman, has incurred medical bills, lost the love, compassion, consortium of her husband and has otherwise been dealt a loss of services, lack of guidance and otherwise has been caused to sustain significant loss services, society and intimacy caused by the injuries sustained by the Plaintiff Jeffrey Hellman, and has otherwise been deprived of the Plaintiff Jeffrey Hellman's services, and help as a husband, household member and/or otherwise.

73.     As a result, the Plaintiff Karen Hellman seeks on her own behalf, such damages as may be awarded by a jury of her peers for the loss of consortium, services, love, compassion, guidance, care, etc. of her husband, Jeffrey Hellman, caused by the Defendants, jointly, severally and individuals in this case, together with such other and further relief as the Court may deem just and proper.

**WHEREFORE**, Plaintiffs herein hereby demand judgment as against Defendants herein, and each of them, jointly, severally and individually in such fair and reasonable amount as may be awarded by a jury of their peers, for each of the claims and allegations as set forth above, together with such other and further relief as to the court and jury may seem just and proper including costs and disbursements of this action, reasonable attorney fees, and interest from the date of the incident.

**DATED:**        October 19, 2021            **CHERUNDOLO LAW FIRM, PLLC**

John C. Cherundolo, Esq.
Peter C. Papayanakos, Esq.
*Attorneys for Plaintiffs*
Office and Post Office Address
AXA Tower I, 15th Floor
100 Madison Street
Syracuse, New York 13202-2078
Telephone (315) 449-9500